Lieutenant John H. RIDDLE, JAGC, USN, 515–44–0368, Petitioner-Appellant,

v.

Honorable John W. WARNER, Secretary of the Navy, and Admiral Clyde J. Van Arsdale, USN, Twelfth Naval District, Respondents-Appellees.

No. 74–1702.

United States Court of Appeals, Ninth Circuit.

July 10, 1975.

J. H. Riddle, pro se, Marshall M. Goldberg, San Francisco, Cal., William A. Falik, Berkeley, Cal., for petitioner-appellant.

Richard F. Locke, Asst. U. S. Atty., N. D. Cal., San Francisco, Cal., for respondents-appellees.

## OPINION

Before KOELSCH and HUFSTEDLER, Circuit Judges, and HILL,* District Judge.

HILL, District Judge:

Lieutenant John H. Riddle, JAGC, USN, filed a petition in the federal court for relief in the nature of mandamus and for a writ of habeas corpus, seeking an unconditional release from the Navy. His principal contention is that his acceptance of a commission as a state notary public effected a forfeiture of his commission in the Navy under 10 U.S.C. § 973(b) (1970). The trial court dismissed the petition on the ground that Article IV, Section 28, of the California Constitution rendered Riddle's commission as notary a nullity. This appeal followed. Counsel inform the Court, and our research confirms, that this case presents first impression questions. We affirm the dismissal of the petition, but do so on grounds different from those expressed by the trial court.

Riddle graduated from the United States Naval Academy in 1968 and from the University of Michigan Law School in 1971. Commitments incident to attendance at the Naval Academy prevent Riddle from resigning from the service for some time to come. Shortly after receiving his law school degree, Riddle was assigned to legal assistance duty to Treasure Island, San Francisco, California. After several months on station, Riddle, with the permission of the Staff Judge Advocate, applied for and was granted a commission as a notary public for the State of California. His four-year term as a notary commenced November 2, 1972.

In late 1972 and early 1973, Riddle made a series of requests to be assigned to an upcoming JAG vacancy at the Oakland Naval Hospital, but the Navy informed him that he would most likely be assigned to sea duty in the Pacific aboard the carrier, U.S.S. Hancock. Riddle responded with several letters to his superiors indicating that he was distressed at this possibility because he opposed the Vietnam war. It was sometime during the course of this correspondence, Riddle claims, that he first learned that under 10 U.S.C. § 973(b), his concurrent holding of a commission as a Naval officer and a commission as a state notary public may have terminated his military appointment.

Section 973(b) provides:

"Except as otherwise provided by law, no officer on the active list of the Regular Army, Regular Navy, Regular Air Force, Regular Marine Corps, or Regular Coast Guard may hold a civil office by election or appointment, whether under the United States, a Territory or possession, or a State. The acceptance of such a civil office or the exercise of its functions by such an officer terminates his military appointment."

The trial court ruled that the automatic termination provisions of 10 U.S.C. § 973(b) were not triggered because the issuance to Riddle of the commission of state notary public was a nullity under state law. The court relied on California

* Honorable Irving Hill, United States District Judge, Central District of California, sitting by designation.

884

Constitution Article IV, Section 28, which provides:

> "A person holding a lucrative office under the United States or other powers may not hold a [state] civil office of profit . . . ."

The trial court's approach requires a consideration and resolution of first impression questions involving the construction to be given to this state constitutional provision. It also involves the federal courts in a holding as to the validity of a state office, which we are inclined to avoid if other grounds for decision are available. Moreover, the trial court's approach does not appear to consider the effect of the last sentence of § 973(b) governing "acceptance" of state office and "the exercise" of the functions of state office, which is conceivably applicable even if the state office was not legally conferrable upon the military officer. Finding that the trial court's result can be reached solely by interpretation of the federal statutes involved, we affirm the judgment without adopting or further commenting on the ground articulated by the trial court.

The government has pressed, in both the trial court and this Court, the argument that the term "civil office" as used in 10 U.S.C. § 973(b) does not include a commission as a state notary public and that the statute, therefore, does not apply. We have found no reported cases on this question. Therefore, we must begin by examining the intention of Congress as revealed by the legislative history of 10 U.S.C. § 973(b) and its predecessors.

The current version of the statute had its genesis in an 1870 enactment. See Act of July 15, 1870, ch. 294, § 18, 16 Stat. 319. The legislative history is sparse; there appears to be no direct illumination of the problem. A comment by the chairman of the reporting committee, however, shows that a principal concern of the bill's proponents was to assure civilian preeminence in government, i. e., to prevent the military establishment from insinuating itself into the civil branch of government and thereby growing "paramount" to it. See Cong. Globe, 41st Cong. 2d Sess.App. 150 (1870). Early comment on the statute suggests that the Congress was also interested in assuring the efficiency of the military by preventing military personnel from assuming other official duties that would substantially interfere with their performance as military officers.[1] See, e. g., 13 Op.Att'y Gen. 310, 311 (1870) (position of Philadelphia Parks Commissioner determined to be a "civil office"); 15 Op.Att'y Gen. 551, 553 (1876) (position as trustees of the Cincinnati Southern Railway determined to be a "civil office"); 35 Op.Att'y Gen. 187, 190 (1927) (position as head of Louisiana State University determined to be a "civil office").

Following these indications of legislative intent, the Attorney General has recently opined specifically that a commission as notary public is not a "civil office" within the meaning of 10 U.S.C. § 973(b). See Letter from Leon Ulman, Deputy Assistant Attorney General, to Honorable James S. Cheney, Judge Advocate General, Oct. 7, 1971. But in 1956, the Comptroller General came to an opposite conclusion under a similarly worded predecessory of § 973(b). See MS Comp.Gen. B–127798 (June 8, 1956). We note that, unlike the cases before either the Attorney General or the Comptroller General, Appellant herein is a military JAG officer, a lawyer. In this context at least, we are persuaded that 10 U.S.C. § 973(b) does not apply.

In our view, the office of notary public when held by a military officer cannot be said to offend either of the purposes underlying the statute. Certainly, there would be no danger that military officers becoming notaries public would threaten the civilian preeminence in

---

1. The fact that the provisions of § 973(b) expressly apply to officers "on the active list," and not to officers who have an inactive status, is also noteworthy as tending to suggest that the congressional intent was to prevent substantial interference with an officer's duties.

government. Nor would the responsibilities of a notary public adversely affect the efficiency of a military officer, especially a military lawyer like Riddle. His value and efficiency, rather than being jeopardized, are perhaps enhanced because of a lawyer's constant need for notary service.

Our conclusion that in this case § 973(b) should not apply is further supported by the fact that a judge advocate in the Navy already has "the general powers of a notary public" conferred upon him by federal statute. See 10 U.S.C. § 936(a) (1970). Section 936(a) empowered Riddle to perform "all notarial acts to be executed by members of any of the armed forces, wherever they may be . . . ." We recognize that Riddle's authority as a state notary public is broader than his authority under 10 U.S.C. § 936(a) because, as a state notary, he can perform notarial acts for civilians as well as military personnel. But the enactment of § 936(a) can be read as indicative of congressional intent that § 973(b) not reach the state commission as a notary public when held by a military JAG officer. See also Cal.Civ.Code § 1183.5 (Wes.Supp.1975).

Thus, we hold that the acceptance by a military JAG officer of a commission as a state notary public does not trigger the automatic termination provisions of 10 U.S.C. § 973(b).

Riddle advances a second contention that can be quickly disposed of. In February 1973, Riddle wrote the Chief of Naval Personnel to ask for a clarification of his military status. The CNP indicated that Riddle's acceptance of the notary public commission did not affect his status as a military officer. But in May 1973, the Comptroller of the Navy ordered that Riddle's pay and allowances be withheld pending final resolution of the legal problem. Riddle was not paid for a period of about five weeks. Thereafter, by order of the Secretary of the Navy, all arrearages were paid and he has since been currently paid in full. Riddle argues that the Secretary of the Navy had no authority to order his pay resumed in the face of the Comptroller's ruling. From this, Riddle proceeds to argue that he is being held in "involuntary servitude". The effect of our decision validates the Secretary's ruling, if any validation thereof is required. Our decision establishes that Riddle has been properly paid. The five-week temporary withholding of pay and allowances was unfortunate, but is de minimis and does not provide the basis for the requested relief.

Affirmed.

